# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **401-548-1956** **(TARGET TELEPHONE)** | Case No. _____ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Meaghan Croke, having been duly sworn, state as follows:

1.      I have been a Special Agent, with the United States Department of Justice,

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since May of 2020.  I am a

graduate of the ATF National Academy Special Agent Basic Training Program and the

Federal Law Enforcement Training Center, Criminal Investigator Training Program.  As

a result of my training and experience as an ATF Special Agent, I am familiar with

Federal criminal laws pertaining to firearms violations.  As a Special Agent, I am also

authorized to carry firearms, execute warrants, make arrests for offenses against the

United States, and perform other such duties as authorized by law.

2.      I submit this affidavit in support of an application for a warrant, under

Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), for information

about the location of the cellular telephone assigned call number 401-548-1956 with

cellular service provided by Sprint (hereinafter, the "Target Telephone," which is also

described at Attachment A), including but not limited to E-911 Phase II data (or other

precise location information and other information as further described in Attachment

B) concerning the Target Telephone (hereinafter, the "Requested Information"), for a

period of thirty (30) days.  The Requested Information, where other information is unavailable, includes records reflecting the tower and antenna face ("cell site") used by the Target Telephone at the start and end of any call.

3.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  See 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  See 18 U.S.C. § 3123(b)(1).

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that Brandon DOLIVRAMENTO (born 11/07/1990) is a felon in possession of a firearm in violation of 18 U.S.C. §§  922(g)(1) & 924(a)(2), and there is probable cause to believe that the Requested Information will constitute or lead to evidence that constitutes evidence of the aforementioned offenses.

6.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court

is a district court of the United States that has jurisdiction over the offense being

investigated, see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

***Arrest of DOLIVRAMENTO and his association with Washington and Delacruz***

7.      On 04/03/2021 at approximately 1:55am, a Rhode Island State Trooper

made a motor vehicle stop on a Chevrolet Malibu (Texas registration NDF6668) due to

the passenger side front tire being completely shredded and the operator driving on a

rim. The operator of the vehicle was identified as Brandon DOLIVRAMENTO (DOB:

11/07/1990), and the two passengers in the vehicle were identified as Ruby Delacruz

and Alycka Washington. While speaking with the occupants, a Rhode Island State

Trooper observed Styrofoam cups in the center console cup holders and detected the

strong odor of alcoholic beverage coming from inside the vehicle. A Rhode Island State

Trooper performed three different standardized sobriety field tests to which

DOLIVRAMENTO displayed signs of impairment.  DOLIVRAMENTO was

subsequently taken into custody and committed to the Ault Correctional Institution

(ACI) on 04/03/21.

8.       I conducted a criminal history query of Brandon DOLIVRAMENTO

(DOB: 11/07/1990, FBI# 728460CD6) and learned that he has 23 arrests and the below

listed felony convictions.

- P2-2016-1957 Drug Trafficking (ten-year sentence with four years to serve)

- P2-2012-3197 Drug Possession (eighteen months' probation)

- P2-2010-0348 Sex Offender Address Change (four-year sentence with six months to serve)

- P1-2008-1608 Second Degree Child Molestation (eight-year sentence with two years to serve). I read a Providence Journal article that stated the victim in this case was an eleven-year-old child.

9.      On 04/03/21, at 4:12pm, while housed at the ACI, Brandon DOLIVRAMENTO placed an outgoing recorded call to call number 413-799-4729. ACI Records indicate that call number 413-799-4729 is listed as Alycka Washington. Alycka Washington is listed as Brandon DOLIVRAMENTO'S friend in ACI prison records.  I noted that Alycka Washington was present in the motor vehicle when Brandon DOLIVRAMENTO was arrested earlier in the day on 04/03/21.

10.      During the call, DOLIVRAMENTO and Washington discuss the recent arrest of DOLIVRAMENTO that Washington and Delacruz were involved in.  At (7:28) DOLIVRAMENTO told Washington "but listen though, listen, my my, my shits in my trunk that shit, that shit got one in the thing"  Washington replied, "I know, I have your keys."  DOLIVRAMENTO replied "yeah I know, just, just pay attention nigga." Washington replied, "I know".

11.      I interpreted this call to be DOLIVRAMENTO telling Washington to be careful because DOLIVRAMENTO'S gun is located in his vehicle's trunk and to be careful because the firearm is loaded with a round in the chamber of the firearm.

12.      On 04/03/21 at 5:32pm, while housed at the ACI, Brandon DOLIVRAMENTO called 413-799-4729 and spoke with Alycka Washington.  During the

recorded call, DOLIVRAMENTO requested Washington three-way call Delacruz.

During the call DOLIVRAMENTO discussed drug trafficking activities with Delacruz.

At (11:52) DOLIVRAMENTO stated "I want to get my thing out of my car." Delacruz

replied "Ohh yup, how, who got the keys? Alycka got the keys?" DOLIVRAMENTO

replied "Yeah." At (12:15) DOLIVRAMENTO stated "but the thing is, it got, it's loaded

already." DOLIVRAMENTO was asked "why would you take that out?"

DOLIVRAMENTO replied "because I don't want it there, it's in my car nigga, I don't

want it in my car nigga if I'm not there." At (12:47) Delacruz asked, "why you even

worried about that shit you went to jail for a DUI." DOLIVRAMENTO replied "I'm

saying take it out of the car and put it in the house somewhere safe."

      13.     On 04/03/21 at 6:15pm, while housed at the ACI, Brandon

DOLIVRAMENTO placed a recorded call to 401-699-6749 and spoke with Ruby

Delacruz. ACI Records indicate that call number 401-699-6749 is listed as Ruby

Delacruz. Ruby Delacruz has visited Brandon DOLIVRAMENTO at the ACI in the

past. During the call, DOLIVRAMENTO and Delacruz discuss DOLIVRAMENTO'S

arrest that both parties were involved in. At (18:32) DOLIVRAMENTO told Delacruz

"tell her to fuckin uhm, to move my car and put it in the street. " At (18:41) Delacruz

replied, "park your car in my lot" and DOLIVRAMENTO then said "yeah, that's what

I'm saying, put it in the visitors' spot, but yo, you got to take the thing out, you hear

me?" Delacruz replied "yeah" and DOLIVRAMENTO replied "and when you take it,

it's already loaded bro, it's already everything, all you got to do is pull the trigger and

that's it, so you got to be careful, so." Delacruz replied, "I'm keeping that shit right in

the trunk, I'm not driving your car."  DOLIVRAMENTO replied "who's gonna drive the car?"  Delacruz replied, "well I'm gonna drive it right down the street from my house."  DOLIVRAMENTO replied "it's, it's unlegit car bro, you shouldn't do that." Delacruz replied, "it's a street over" and DOLIVRAMENTO replied "you're really gonna chance that, why wouldn't you just take it out, nigga what the fuck?"  At (19:28), DOLIVRAMENTO told Delacruz "if you were smart, you would take it right now, go, go get the key, take it, and put it in your shirt and walk it back to your house and then go get the car, you hear me?"  Delacruz replied "humh" and DOLIVRAMENTO said "I'm gonna call you in a few, I'm gonna call Lycka and see where she's going, you need her car right?"

14.     I interpreted this call to be DOLIVRAMENTO telling Delacruz to retrieve his gun that is in the trunk of his unregistered car and to be careful because the gun is loaded with a round in the chamber of the firearm.

15.     On 04/03/21 at 6:36pm, while housed at the ACI, Brandon DOLIVRAMENTO called 413-799-4729 and spoke with Alycka Washington. During the recorded call (0:52) DOLIVRAMENTO told Washington "…she's gonna move my car, but I told her to take the shit out, she's gonna move my car and like park it at her house."  During the call (3:13) DOLIVRAMENTO told Washington "…or you could just fuck it, I told you what to do, go put the shit in the house real quick and just park the shit in the street real fast, can you park an unlegit car in the street?"  Washington replied "yeah, there's (inaudible) cars parked on the street."  DOLIVRAMENTO replied "unlegit though?"  Washington replied "uhh, well you still got plates on it though, so."

DOLIVRAMENTO replied "I do, yup, yup."  At (3:37) DOLIVRAMENTO told

Washington "but you got to take that shit out, I told her to take it (inaudible) her crib."

16.      I interpreted this call to be DOLIVRAMENTO telling Washington to

retrieve his gun that is in the trunk of his unregistered vehicle and to then park the

vehicle in the street.

### *Investigators become aware of DOLIVRAMENTO'S possession of a firearm*

17.      On 05/20/21, SA Jardin was contacted by an ACI Investigator about a

phone call that was placed on 05/20/21 at 4:22pm by an inmate housed at the ACI.  The

ACI investigator reported that the inmate was requesting someone remove his loaded

firearm from the trunk of his unregistered vehicle.

18.      I listened to the recorded call that was placed by DOLIVRAMENTO on

05/20/21 at 4:22pm while housed at the ACI and learned that Brandon

DOLIVRAMENTO called 401-699-6749 and spoke with Ruby Delacruz.  Ruby Delacruz

told Brandon DOLIVRAMENTO that she was (0.29) "at the park with the kids and

Lycka."  DOLIVRAMENTO then, when referring to Lycka, told Delacruz "called her

phone twice."  Delacruz replied, "I know it doesn't let her pick up, hold on."  It is

believed that Delacruz and Alycka Washington were together, and Delacruz passed her

phone to Washington, as I then heard Washington say "hello."  DOLIVRAMENTO then

replied, "damn nigga I'm blowing you up."  Washington replied, "I know, it's not

letting me, every time I press one it, it will, it just keeps going through all the other

options, I keep pressing one and it won't let me answer it, I got like five dollars on

there, so I don't understand." DOLIVRAMENTO replied "it lets me call, so I don't know."

18.      At (1:38) DOLIVRAMENTO asked Washington "what are you guys doing?" Washington replied, "were at Slater Park, were gonna have ice cream."

19.      During the call, DOLIVRAMENTO told Washington to move his car. At (10:29) DOLIVRAMENTO told Washington "that shit that's in my trunk you got to fuckin uhm, you got to take it out and put it in your car, but you can't touch it, that shits like, you gotta call Ori to go decock it." Washington responded by saying "what? oh god." DOLIVRAMENTO replied "call Ori right now on three way, call Ori." At (10:49) Washington said "Ruby, can you three way Ori?" DOLIVRAMENTO is then told that Ori did not answer, and Ori's phone is going straight to voicemail. DOLIVRAMENTO responded (11:30) "call fuckin, call Devin then." DOLIVRAMENTO is then connected to Devin at (12:02). At (12:07) DOLIVRAMENTO told Devin "hey yo, fuckin right, hey yo, I need a fuckin favor right, when you go home tonight, go by Alycka's crib right, inside my car, inside the trunk, is my shit, my shits in there but it got one in the shit in it, it got one in the head, gonna move it, she's moving to my crib, but she can't have it in my car, cause it fuckin, like my car's not registered." Devin replied, "you don't got to keep talking like that, what you want me to do just grab it and just hold it?" At this point, Delacruz interjects "yo Ori's on the line too."

20.      At (12:40) DOLIVRAMENTO, while addressing Ori, stated "I was calling you to fuckin do some quick shit, but fuckin, I just, I just Devin answered first and shit." DOLIVRAMENTO further explained to Ori (12:54) "nah, I was gonna have, I'm gonna

have this nigga decock my shit." At this point it appears as if Ori leaves the

conversation and DOLIVRAMENTO continued the conversation with Devin.

21.    At (17:42) DOLIVRAMENTO told Devin "why you want to hold that Dev,

you want to hold it?"  Devin replied "inaudible, I'll hold it."  DOLIVRAMENTO replied

"you got to hold it, you got to fuckin, you got to give me the shit, give me some cash

and I'll fuckin."  Devin replied, "I would have held it but I got too much on my fuckin

shit right now, honestly I was gonna hold it just so I could give Leaky, Leaky one cause

Leaky don't got shit and I was gonna give Leaky mine."  DOLIVRAMENTO replied

"…I ain't fuckin with him like that nigga, I ain't giving him my shit."  The call abruptly

ended at 4:41pm.

22.    I understood the above described conversation to mean that

DOLIVRAMENTO has a loaded gun in the trunk of his unregistered car that is parked

at Washington's residence.  DOLIVRAMENTO wanted Washington to move his vehicle

and requested that Washington move the gun from his trunk to her vehicle.

DOLIVRAMENTO cautioned Washington that the gun was loaded and cocked.

23.    DOLIVRAMENTO, through Delacruz, then contacted "Devin" who

agreed to go to Washington's residence to obtain the gun from the trunk of

DOLIVRAMENTO'S vehicle to hold for DOLIVRAMENTO.

24.    I noted that on 05/20/21, Delacruz using call number 401-699-6749 three

way called "Devin" at approximately 4:34pm.

25.    On 05/21/21, ATF TFO Smith checked an address associated with Alycka

Washington.  ACI records list Washington's address as 141 Warren Ave Pawtucket. RI

02860.  Alycka Washington is listed as Brandon DOLIVRAMENTO'S friend in ACI

prison records.  On 05/21/21, TFO Smith observed a Gray Honda sedan displaying RI

Registration RR-196 parked in the left side driveway of 141 Warren Ave.  A registration

query revealed that the vehicle's registration was suspended and last registered to

DOLIVRAMENTO with a registered address of 19 Marigold Circle North Providence,

RI 02904.  ATF TFO Smith noted that the vehicle was a sedan and had a trunk.

26.     On 05/21/21, at 2:05pm, DOLIVRAMENTO placed an outgoing recorded

call to Washington at call number 413-799-4729.  I listened to the call and learned that

during the call (1:00) DOLIVRAMENTO asked Washington "fuckin uh, did this, did

this nigga call you?"  Washington replied "Devin?" and DOLIVRAMENTO replied

"yeah."  Washington replied "yeah, he came last night."  DOLIVRAMENTO then asked

"what, what he do?"  Washington replied, "he went in your trunk and took it."

DOLIVRAMENTO replied "I didn't really want him to take my shit."  Washington

replied "okay, well we put the phone down and we muted it cause we didn't want to

listen to your conversation and then I asked her I was like (inaudible)  make sure the

phone don't hang up so like if he needs to tell us something before and she was like ohh

yeah sorry I already hung up, I'm like okay, well, and then Ori called after and he was

like tell them niggas don't ever have me on no jail phone call again, the shit they were

talking about, hell no and then Devin called me last night when I was at Ruby's and he

was like yo are you home I'm gonna come get his shit and I was like is that what he said

to do and he was like yeah and then he walked here, got it and left."

27.     DOLIVRAMENTO then asked Washington to call Devin on three way.  At (2:47) Washington told DOLIVRAMENTO "yo he's on there."  Devin then said "yo" and DOLIVRAMENTO replied "you took it?"  Devin replied "yeah." DOLIVRAMENTO replied "my nigga don't give my shit to nobody my nigga, I don't want my shit."  Devin replied, "I'm not, it's in my crib, I already got it hidden." DOLIVRAMENTO replied "all right man, for real."  Devin replied, "alright bro I got you."  DOLIVRAMENTO then said, "all I really wanted you to do was just take that shit out for me."  Devin replied "Alright, I got you."  DOLIVRAMENTO replied "Don't give it to Maliek none of that shit…" Devin replied, "no I got you, (inaudible) you don't even got to talk like that on the phone, I got you, I heard you."  DOLIVRAMENTO replied "I only deal with you or Ori nigga, I don't really deal with other niggas, niggas do what they want on their own time when their over there, I don't got time for that." Devin replied "true."  Devin exited the call at (9:00) and DOLIVRAMENTO continued his conversation with Washington.

28.     I noted that on 05/21/21, Washington using call number 413-799-4729 three way called "Devin" at approximately 2:07pm.  Devin exited the call at approximately 2:14pm.

### *Identification of Devin as Devin FERNANDES*

29.     SA Jardin requested and received subscriber and toll records for call number 413-799-4729 (Washington). SA Jardin learned that call number 413-799-4729 is subscribed to by Alycka Washington.

30.     IRS Haley analyzed call data for 413-799-4729 (Washington) and determined that on 05/21/21, at 2:07pm, Washington dialed Target Telephone when Washington three way called "Devin."  The call detail records indicated that the call to the Target Telephone (Devin) lasted for 6 minutes and 35 seconds which is consistent with the amount of time "Devin" was on the three way call with Washington and DOLIVRAMENTO.

31.     SA Jardin noted that during the 05/21/21 jail call between Washington and DOLIVRAMENTO, Washington explained to DOLIVRAMENTO that during the evening of 05/20/21, "Devin" called her and asked her if she was home because he was going to get DOLIVRAMENTO'S gun referred to as "his shit".

32.     IRS Haley analyzed call detail records for 413-799-4729 (Washington) for the evening of 05/20/21 and determined that the Target Telephone (Devin) called 413-799-4729 (Washington) at 8:32pm and Washington texted (Devin) at 8:39pm.  The analysis conducted by TFO Haley corroborated what Washington told DOLIVRAMENTO that "Devin" called her on the night of 05/20/21 before coming to get DOLIVRAMENTO'S gun.

33.     SA Jardin queried the call number assigned to the Target Telephone (401-548-1956)  through a commercially available people locator database (Accurint) and learned that the Target Telephone is associated with a Devin Fernandes (DOB: 07/23/1996) with an address of 200 Esten Ave Apt 506 Pawtucket, RI. SA Jardin, using Google Maps noted that 200 Esten Ave Pawtucket, RI is a three minute walk (.2 miles) from Washington's residence (141 Warren Ave Pawtucket, RI).

34.     SA Jardin noted that the close proximity between Washington's and FERNANDES residences is consistent with Washington telling DOLIVRAMENTO that "Devin" walked over to get DOLIVRAMENTO'S gun out of the trunk of DOLIVRAMENTO'S vehicle.

35.     SA Jardin noted that on 05/21/21, TFO Smith observed a Gray Honda sedan that had a trunk displaying RI Registration RR-196 parked in the left side driveway of 141 Warren Ave. (Washington's residence).  A registration query revealed that the vehicle's registration was suspended and last registered to DOLIVRAMENTO. This is also consistent with Washington telling DOLIVRAMENTO that "Devin" walked over to get DOLIVRAMENTO'S gun out of the trunk of DOLIVRAMENTO'S vehicle.

36.     SA Jardin requested a utility query and learned that Devin FERNANDES has an active utility account at 200 Esten Street Apt. 506 Pawtucket, RI 02860.  The contact number for Devin FERNANDES is listed as the Target Telephone.  SA Jardin noted that Target Telephone is the number that Washington called when DOLIVERMENTO asked her to three way call Devin as well the call number that Washington communicated with on the night Devin came to get DOLIVRAMENTO'S gun (05/20/21).

37.     On 5/28/21, at approximately 1015 hours, TFO Smith was conducting surveillance of 200 Esten Ave., the Village Loft apartments.  TFO Smith observed a black Chevrolet Pick-up truck bearing Florida REG LJTW77.  The vehicle had heavy black tint on all windows including the front windshield.  Det. Smith observed the truck circle the Village Loft apartments parking lot and then back into a parking spot near the

wall on Esten Ave.  The operator stayed inside the vehicle for approximately 10-15

minutes.  At approximately 1030 hours the driver who TFO Smith believed to be Devin

FERNANDES (DOB 7-23-96) and who was later positively identified by patrol as Devin

FERNANDES (DOB 7-23-96) exited the vehicle. FERNANDES then walked to the

wooden walkway steps leading to Esten Ave.

38.     The walkway has a small landing halfway up, which has an access door

leading to an underground passage from the parking lot to the Village Loft apartments.

TFO Smith observed FERNANDES enter the Village Loft apartments access door.

Approximately 10 minutes later TFO Smith observed the same male (FERNANDES) exit

the same access door and walk directly to the same black pick-up and enter the driver's

door.  FERNANDES stayed inside the truck for approximately 45 minutes.

39.     At approximately 1130 hours, Pawtucket Police Officers were conducting

patrol in the Esten Ave area.  While patrolling in the area TFO Smith alerted them of a

tinted out, black Chevrolet pick-up truck (FL REG LJTW77) idling in the parking lot of

200 Esten Ave.  Pawtucket Police Officers made contact with the occupant, Devin

FERNANDES who was immediately confrontational with Police and stated, "he lives

here" and felt he had no reason to be questioned.  FERNANDES initially refused to

identify himself at first but after some time reasoning with him, FERNANDES provided

his license (active) and a piece of mail with had his name, and his current address (200

Esten Ave Apt 506).  Pawtucket Police Officers clarified with FERNANDES if Apt 506

was indeed his address which he replied yes.  Once FERNANDES identified himself, he

no longer wanted to speak with police and as a result the contact was ended.

40.     After identifying FERNANDES, I later learned that FERNANDES is the named defendant in an ongoing eviction proceeding against him, with the next hearing being set for June 10, 2021.  Additionally, during my review of DOLIVRAMENTO's recorded calls from the ACI, FERNANDES mentioned that he is actively seeking a new place to live.  Based on this information, I believe that FERNANDES is likely to move out of 200 Esten Ave Apt 506 in the very near future.

41.     Based on the above, I believe that there is probable cause to believe that DOLIVRAMENTO is a felon in possession of a firearm that is being stored for him by FERNANDES at FERNANDES' residence (200 Esten Ave. Apt. 506 Pawtucket, RI).  I also believe that there is probable cause to believe that the Requested Information will be relevant and material to the ongoing criminal investigation of DOLIVRAMENTO and FERNANDES being conducted by ATF.  The Requested Information will allow investigators to track the movement of the Target Telephone and that, in turn, will enable investigators to track the movement of FERNANDES.  Such tracking can assist in the surveillance of FERNANDES, and such surveillance is likely to yield evidence of the storage location of DOLIVRAMENTO'S firearm.

### *Cellular Telephone Location Information*

42.     In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-

longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

43.     Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Telephone, including by initiating a signal to determine the location of the subject phone(s) on Sprint's network or with such other reference points as may be reasonably available.  I also know that Sprint can collect cell-site data about the Target Telephone and that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

44.     Based on my training and experience, I know that Sprint can collect cell-site data about the Target Telephone.  Based on my training and experience, I know that

for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

45.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

46.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user(s) of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize

the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the

extent that the warrant authorizes the seizure of any wire or electronic communication

(as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is

reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. §

3103a(b)(2).

47.     I further request that the Court direct Sprint to disclose to the government

any information described in Attachment B that is within the possession, custody, or

control of Sprint.  I also request that the Court direct Sprint to furnish the government

all information, facilities, and technical assistance necessary to accomplish the collection

of the information described in Attachment B unobtrusively and with a minimum of

interference with Sprint's services, including by initiating a signal to determine the

location of the Target Telephone on Sprint's network or with such other reference

points as may be reasonably available, and at such intervals and times directed by the

government.  The government shall reasonably compensate Sprint for reasonable

expenses incurred in furnishing such facilities or assistance.

48.     I further request that the Court authorize execution of the warrant at any

time of day or night, owing to the potential need to locate the Target Phone outside of

daytime hours.

49.     I further request that the Court order that all papers in support of this

application, including the affidavit and search warrant, be sealed until further order of

the Court.  These documents discuss an ongoing criminal investigation that is neither

public nor known to all targets of the investigation.  Accordingly, there is good cause to

seal these documents because their premature disclosure may seriously jeopardize that

investigation.

*Meaghan Croke*

Meaghan Croke
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives.

Attested to by the applicant in accordance with the requirements of Fed.R. Crim. P. 4.1 by
telephone.

_____          _____
*Date*                                          *Judge's signature*

_Providence, RI_____          Lincoln D. Almond, US Magistrate Judge
*City and State*                             *Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Searched**

1. The cellular telephone assigned call number **401-548-1956 (the "Target Telephone")** used by FERNANDES and whose wireless service provider is Sprint, a company headquartered in Overland Park, Kansas.

2. Records and information associated with the Target Telephone that are within the possession, custody, or control of Sprint including information about the location of the cellular telephone if it is subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

I.        **Information to be Disclosed by the Provider**

1.   All information about the location of the Target Telephone described in

Attachment A for a period of thirty days, during all times of day and night.

"Information about the location of the Target Telephone includes all available

E-911 Phase II data, GPS data, latitude-longitude data, and other precise

location information, as well as all data about which "cell towers" (i.e.,

antenna towers covering specific geographic areas) and "sectors" (i.e., faces of

the towers) received a radio signal from the cellular telephone described in

Attachment A.

To the extent that the information described in the previous paragraph

(hereinafter, "Location Information") is within the possession, custody, or

control of Sprint, Sprint is required to disclose the Location Information to the

government.  In addition, Sprint must furnish the government all

information, facilities, and technical assistance necessary to accomplish the

collection of the Location Information unobtrusively and with a minimum of

interference with Sprint's services, including by initiating a signal to

determine the location of the Target Telephone on Sprint's network or with

such other reference points as may be reasonably available, and at such

intervals and times directed by the government.  The government shall

compensate Sprint for reasonable expenses incurred in furnishing such

facilities or assistance.

2. To the extent that the information described in Attachment A is within the

   possession, custody, or control of the Provider, including any information

   that has been deleted but is still available to the Provider or that has been

   preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider

   is required to disclose to the government the following information

   pertaining to the Account listed in Attachment A for the time period June

   2020 through present:

   a. The following information about the customers or subscribers of the

      Account:

      i. Names (including subscriber names, usernames, and screen
         names);

      ii. Addresses (including mailing addresses, residential addresses,
          business addresses, and e-mail addresses);

      iii. Local and long distance telephone connection records;

      iv. Records of session times and durations, and the temporarily
          assigned network addresses (such as Internet Protocol ("IP")
          addresses) associated with those sessions;

      v. Length of service (including start date) and types of service
         utilized;

      vi. Telephone or instrument numbers (including MAC addresses,
          Electronic Serial Numbers ("ESN"), Mobile Electronic Identity

Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

II.     **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§  922(g)(1) & 924(a)(2) involving Brandon DOLIVRAMENTO.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.